IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRAIG CUNNINGHAM on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : Case No. 2019-CV-2547 : |
| v. | : : **JURY TRIAL DEMANDED** : |
| PENN L.L.C. d/b/a PULSETV.COM | : : |
| Defendant. | : : : : : |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Craig Cunningham ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiff alleges that Penn L.L.C. d/b/a PulseTV.com ("PulseTV.com") sent an automated text message to the Plaintiff and other putative class members without their prior express written consent.

3. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of PulseTV.com.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Craig Cunningham resides in Texas.

6. Defendant Penn L.L.C. d/b/a PulseTV.com is a Delaware limited liability company with its principal place of business at 7851 185th St., No. 106 in Tinley Park, IL 60477. PulseTV.com has a registered agent of Tom Zegar located at the same address.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls at issue that gave rise to the Plaintiff's claims occurred from this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones**

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. In enacting the TCPA, Congress expressly found that "[u]nrestricted telemarketing… can be an intrusive invasion of privacy[,]… consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers[,],… [e]vidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[,]… [and that] [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."

13. In enacting the TCPA, Congress gave the Federal Communications Commission ("FCC") the power to prescribe regulations to implement the TCPA.

14. In 2013, the FCC prescribed a regulation requiring prior express written consent for all autodialed or prerecorded calls ("robocalls") which include or introduce an advertisement *or* which constitutes telemarketing to wireless numbers. Specifically, it required:

> "[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called

3

> advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. §§ 64.1200(a)(2) and (f)(8).

**The Growing Problem of Automated Calls**

15. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

16. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

17. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

18. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

19. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

20. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited April 10, 2019).

**Factual Allegations**

21. PulseTV.com sells after market goods and electronics.

22. To generate placements, PulseTV.com relies on telemarketing.

23. PulseTV.com's telemarketing includes sending automated calls using SMS codes, which is systemic data used to track automated text messages.

24. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

25. Mr. Cunningham's telephone number, (214) 531-XXXX, is a cellular telephone number.

26. Despite being a cellular telephone number, Mr. Cunningham received an unsolicited and automated text message from the Defendant.

27. A copy of the text message is below:

5



28. The call was made from the SMS Code 39664.

29. The fact that a SMS code was used to send the text message is evident that it was sent using an ATDS, as SMS codes are reserved for automatically made text messages.

30. In fact, this specific SMS Code is registered to MessageMedia.

31. MessageMedia's website, www.messagemedia.com, boasts the ability to send more than *170,000,000* text messages a month.

32. These facts support the Plaintiff's allegation that the calls were made using an "Automatic Telephone Dialing System", as that term is defined by the TCPA.

33. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

34. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## Class Action Allegations

35. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

36. The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom Defendant or a third party acting on its behalf, (a) made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; (d) at any time in the period that begins four years prior to the date of the filing of the Complaint through trial.

Excluded from the class are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

37. The class as defined above are identifiable through phone records and phone number databases.

7

38. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

39. Plaintiff is a member of the proposed class.

40. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated calls to contact putative class members' cellular telephones;

    b. Whether Defendant placed calls without obtaining the recipients' prior express written consent for the call;

    c. Whether the Plaintiff and the class members are entitled to damages in the amounts liquidated by the TCPA because of Defendant' actions.

41. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

42. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

43. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

44. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

45. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

46. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Causes of Action

### Count One:
### Violation of the TCPA's Automated Call Provisions

47. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

48. The Defendant violated the TCPA by (a) initiating telephone calls using an automatic telephone dialing system to telephone numbers assigned to a cellular telephone service without the prior express consent of the called party. *See* 47 C.F.R. § 64.1200(a)(1);

49. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

50. The Defendant's violations were willful and/or knowing.

51. Under the TCPA, the Plaintiff is entitled to injunctive relief. The Plaintiff seeks injunctive relief prohibiting Defendant from calling cellular telephone numbers using an automatic telephone dialing system, absent emergency circumstances.

52. In addition, plaintiff seeks damages of $500.00 for each such violation. *See* 47 U.S.C. § 227(b)(3).

53. Plaintiff requests the Court to exercise its discretion and treble such damages for each willful or knowing violation.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant's actions complained of herein violate the TCPA;

E. An order enjoining Defendant from cellular telephone numbers using an automatic telephone dialing system, absent emergency circumstances;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

[SIGNATURE BLOCK TO FOLLOW]

Dated this 15th day of April, 2019.

                Respectfully submitted,

                **HANSEN REYNOLDS LLC**

                By: */s/ Michael C. Lueder*
                    Michael C. Lueder
                    Email: mlueder@hansenreynolds.com
                    301 N. Broadway Suite 400
                    Milwaukee, WI 53202
                    Ph. 414-273-8474
                    Fax: 414-273-8476

                    Alan W. Nicgorski
                    Email: anicgorski@hansenreynolds.com
                    150 S. Wacker Dr Ste 2400
                    Chicago, IL 60606
                    Ph. 414-273-8474
                    Fax: 414-273-8476

                    Anthony Paronich
                    Paronich Law, P.C.
                    350 Lincoln Street, Suite 2400
                    Hingham, MA 02043
                    [o] (617) 485-0018
                    [c] (508) 221-1510
                    [f] (508) 318-8100

                *Attorneys for Plaintiff Craig Cunningham*